UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SAMUEL MARVIN LEE McFARLAND,<br><br>                    Plaintiff,<br><br>        v.<br><br>ARBEN KULLOJKA, *et al.*,<br><br>                    Defendants. | Case No. C18-457-JCC-JPD<br><br>REPORT AND RECOMMENDATION |

INTRODUCTION AND SUMMARY CONCLUSION

This is a civil rights action proceeding under 42 U.S.C. § 1983. Plaintiff Samuel McFarland alleges in his civil rights complaint that defendants violated his Eighth Amendment rights while he was confined in the Intensive Management Unit (IMU) at the Monroe Correctional Complex (MCC) in 2017. Plaintiff claims that he was denied showers and was forced to shower without privacy, and that defendants were indifferent to the mental and physical impact these conditions had on him. Plaintiff identifies Arben Kullojka and Aaron Roos as defendants in this action. Plaintiff seeks declaratory relief and damages.

Defendants now move for summary judgment. Plaintiff has been advised of the summary judgment requirements pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), but has filed

REPORT AND RECOMMENDATION
PAGE - 1

no response to defendants' motion. The Court, having reviewed plaintiff's complaint, defendants' motion for summary judgment, and the balance of the record, concludes that defendants' motion should be granted, and that plaintiff's complaint and this action should be dismissed with prejudice.

## BACKGROUND

Plaintiff's claims arise out of the conditions of his confinement in the MCC-IMU from late May 2017 through late August 2017. Specifically, plaintiff complains that he was denied showers from May 27, 2017 to June 5, 2017, and that he was denied a shower again on June 26, 2017. (Dkt. 5 at 3.) Plaintiff also complains that he was forced to shower without any privacy from May 29, 2017 to July 3, 2017 while housed in the IMU F-Pod, and that he was again forced to shower without privacy on August 27, 2017 while housed in the IMU D-Pod, because the showers in those units did not have curtains. (*Id*. at 3, 5.) Defendant Arben Kullojka is a Correctional Unit Supervisor (CUS) for the MCC-IMU, and he held that position at all times relevant to this action. (*See* Dkt. 16, ¶¶ 1, 4.) Defendant Aaron Roos is a Corrections Sergeant assigned to the MCC-IMU, and he held that position at all times relevant to this action. (*See* Dkt. 14, ¶¶ 1, 3.)

The IMU houses offenders who require a heightened degree of security and supervision, including offenders with chronic behavioral problems, offenders who pose a serious threat to the safety of staff or other offenders, offenders who are considered an escape risk, and offenders who require extreme protection. (Dkt. 16, ¶ 3.) Because of the safety and security issues posed by offenders housed in the IMU, restrictions on their movement may be imposed when necessary. (*Id*.) Throughout his time in the IMU, plaintiff posed a threat to himself and others, and engaged in multiple attempts to harm himself. (Dkt. 14, ¶ 8 and Exs. 1-6.) It was therefore

necessary for staff to closely observe plaintiff and to implement protective measures on occasion. (Dkt. 14, ¶ 8 and Exs. 1-6.)

On May 29, 2017, plaintiff was placed on "conditions of confinement," to include "no movement," after he was infracted for possessing a homemade weapon which he admitted he intended to use to stab and paralyze another offender. (*Id*., ¶ 9 and Ex. 8.) This modification to plaintiff's conditions of confinement was in effect from May 29, 2017 to June 5, 2017. (*Id*., Ex. 8.) On June 3, 2017, plaintiff filed a grievance complaining that since being placed on no-movement status on May 29, 2017, he had not been allowed out of his cell to shower even though he was entitled to receive a shower at least every 72 hours. (*See* Dkt. 15, Ex. 1 at 1, 8.)

Plaintiff's grievance was investigated by MCC-IMU grievance coordinator, Brandi Blair. (*See id*., Ex. 1 at 1-2, 9.) As a part of her investigation, Ms. Blair spoke with Sergeant Roos who confirmed that for the preceding few years offenders on no-movement status had not been let out of their cells for any reason, including for showers and medical appointments. (*Id*., Ex. 1 at 2.) Sergeant Roos thereafter reviewed the policy, and spoke with CUS Kullojka, and it was determined that offenders on no-movement status should be allowed to shower on regularly scheduled days, unless the offender's behavior warranted otherwise.[1] (*See id*.) On June 27, 2017, Ms. Blair provided plaintiff a response to his grievance in which she advised that he should have been allowed to shower while on no-movement status, absent safety or security concerns arising out of his current behavior, and that the IMU sergeants were working to ensure all staff followed the correct procedure in the future. (*Id*., Ex. 1 at 1.)

---

[1] Scheduled shower days in the IMU are Mondays, Wednesdays, and Saturdays. (Dkt. 14, ¶ 11.)

REPORT AND RECOMMENDATION
PAGE - 3

Plaintiff was placed on no-movement status again by Sergeant Roos on June 22, 2017, for another seven-day period, this time for making threatening statements. (*See* Dkt. 15, Ex. 1 at 3, 4, 11.) Plaintiff was allowed out for his shower on June 24, 2017, but two days later, on June 26, 2017, plaintiff was not permitted to shower and staff indicated to him it was because he was on no-movement status. (*See id*.) On June 27, 2017, plaintiff spoke to CUS Kullojka and complained about not getting a shower. (*Id*., Ex. 1 at 12.) CUS Kullojka advised plaintiff he would be getting a shower unless his behavior presented a threat to staff or to plaintiff, and he instructed Sergeant Roos to have unit staff allow plaintiff to shower. (*Id*.) Plaintiff was allowed out to shower on the next IMU shower day, June 28, 2017. (*Id*.)

CUS Kullojka also clarified with IMU staff that offenders on no-movement status should be allowed to shower unless their behavior dictated otherwise. (*Id*., Ex. 1 at 11-12.) Plaintiff continued to grieve the denial of showers while on no-movement status, in particular the second incident on June 26, 2017 which plaintiff believes could have been avoided if the change in procedure had been properly communicated to staff. (*See id*., Ex. 1 at 19-26.) The grievance process did not conclude until September 2017, though plaintiff apparently reported no further missed showers after the June 26, 2017 incident. (*Id*., Ex. 1 at 25-26.)

Also at issue in this action is the absence of shower curtains in the IMU F-Pod from May 29, 2017 to July 3, 2017, and the absence of a shower curtain in the IMU D-Pod on August 27, 2017. The showers in the IMU are equipped with a gated door and a cuff port. (Dkt. 14, ¶ 5.) According to Sergeant Roos, each shower has a panel which covers the middle section of the door and allows male prisoners to shower without exposure of their genitals to others. (*Id*.) This enables corrections staff to see the face and chest of the offender, and monitor the offenders' activities, while providing privacy to the offender. (*Id*.) Sergeant Roos states that monitoring

REPORT AND RECOMMENDATION
PAGE - 4

the activities of offenders during showers is necessary to prevent an offender from engaging in self-harm, and to protect other offenders and staff. (Dkt. 14, ¶ 5.)

Sergeant Roos and CUS Kullojka both appear to confirm that the showers in the IMU were not equipped with privacy curtains until sometime in 2017. (*See id.*, ¶ 6; Dkt. 16, ¶ 5.) When privacy curtains were finally installed, they were installed on the upper portion of the shower door, apparently in deference to a transgender inmate who was concerned that staff or other offenders passing by could see her chest. (Dkt. 16, ¶ 5.) According to Sergeant Roos, during the time period at issue in this case, there was debate among the IMU staff about whether the curtains should be placed on the upper or lower part of the shower. (Dkt. 14, ¶ 6.)

On July 2, 2017, plaintiff filed a grievance complaining about the shower conditions in the IMU F-Pod. (*See* Dkt. 15, Ex. 3 at 5.) Specifically, plaintiff complained that the top and bottom of the shower door had large checkered grates with holes large enough to put a hand through, and that because of his height, 5 feet 5 inches, his entire lower body was exposed when taking a shower. (*See id.*, Ex. 3 at 1, 5.) Ms. Blair again investigated plaintiff's grievance, and provided a response on July 31, 2017 in which she advised plaintiff that each pod at the IMU should have a tan privacy curtain, that the curtain in F-Pod had apparently been taken down and not replaced, and that a curtain had been put up since plaintiff made his complaint. (*See id.*, Ex. 3 at 1-5.)

On August 27, 2017, plaintiff filed another grievance regarding shower curtains, this one complaining that on that date he had been placed in a shower in the IMU D-Pod which did not have a curtain. (*See id.*, Ex. 2 at 1, 4.) Ms. Blair and CUS Kullojka spoke to plaintiff about the issue and acknowledged that curtains should be installed in the showers to provide a reasonable amount of privacy. (*Id.*, Ex. 2 at 1.) On September 1, 2017, plaintiff confirmed to Ms. Blair that

REPORT AND RECOMMENDATION
PAGE - 5

shower curtains were installed on August 31, 2017, though he apparently continued to express concern that the curtains were installed on the upper portion of the stall rather than the lower portion where he wanted it. (Dkt. 15, Ex. 2 at 1.) Ms. Blair spoke with CUS Kullojka about plaintiff's concern on September 14, 2017, and CUS Kullojka indicated he would communicate to the IMU staff that they should entertain requests to move the curtain based on the specific needs of the offender, and that authorization to move the curtain would be granted on a case by case basis. (*See id.*, Ex. 2 at 1-2.)

Plaintiff continued to grieve the shower curtain/privacy issue even after curtains were put up. (*See id.*, Ex. 2 at 6, 15.) Plaintiff's primary complaint in his grievance appeals was that CUS Kullojka and Sergeant Roos did not fix the problem after his first complaint in early July 2017, as evidenced by the fact that the issue recurred in late August 2017, albeit in a different housing pod. (*See id.*) The grievance process finally concluded in February 2018. (*See id.*, Ex. 2 at 15.)

Plaintiff alleges in his complaint that defendants violated his Eighth Amendment rights when they denied him showers and forced him to shower without privacy. (*See* Dkt. 5 at 3, 5.) Defendants argue in their motion for summary judgment that plaintiff has not established any violation of his Eighth Amendment rights. (*See* Dkt. 13.)

DISCUSSION

Summary Judgment Standard

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears

the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.  The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The Court must draw all reasonable inferences in favor of the nonmoving party. *Id*. at 585-87.

In supporting a factual position, a party must "cit[e] to particular parts of materials in the record . . .; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 585.  "[T]he requirement is that there be no *genuine* issue of material fact. . . .  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216,

1221 (9th Cir. 1995). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

Section 1983 Standard

In order to set forth a *prima facie* case under § 1983, a plaintiff must establish a deprivation of a federally protected right. *Baker v. McCollan*, 443 U.S. 137, 140 (1979). The particular harm complained of must be scrutinized in light of specifically enumerated rights. *Id*. That a plaintiff may have suffered harm, even if due to another's negligent conduct, does not itself demonstrate a violation of constitutional protections. *See*, *e.g.*, *Davidson v. Cannon*, 474 U.S. 344, 347 (1986) ("[W]here a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required.").

A plaintiff must also allege facts in his § 1983 complaint showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). To satisfy the causation requirement, a plaintiff must demonstrate that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold*, 637 F.2d at 1355 (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)). A defendant cannot be held liable under § 1983 solely on the basis of the individual's supervisory responsibility or position. *Monell v. Department of Social Servs., of City of New York*, 436 U.S. 658, 691-694 (1978). Rather, a plaintiff must allege that a defendant's own conduct violated the plaintiff's civil rights. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385-90 (1989).

Eighth Amendment

The treatment a prisoner receives in prison, and the conditions under which he is confined, are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). The Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement. *Id*. This duty includes ensuring that inmates receive adequate food, clothing, shelter, and medical care, and taking reasonable measures to guarantee the safety of inmates. *Id*. In order to establish an Eighth Amendment violation, a prisoner must satisfy a two-part test containing both an objective and a subjective component. The Eighth Amendment standard requires proof that (1) the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation; and (2) the prison official acted with a sufficiently culpable state of mind. *Id*. at 834.

The objective component of an Eighth Amendment claim is "contextual and responsive to 'contemporary standards of decency.'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' . . . are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (citing *Rhodes v*. Chapman, 452 U.S. 337, 347 (1981)). The state of mind requirement under the subjective component of the Eighth Amendment standard has been defined as "deliberate indifference" to an inmate's health or safety. *Farmer*, 511 U.S. at 834. Under the "deliberate indifference" standard, a prison official cannot be found liable for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. *Id*. at 837. The Supreme Court has made clear that it is obduracy and wantonness, not inadvertence or error in

good faith that characterize the conduct prohibited by the cruel and unusual punishment clause. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Plaintiff first complains about being denied showers while on no-movement status from May 29, 2017 to June 5, 2017, and again on June 26, 2017. Because offenders housed in the IMU are typically provided showers each week on Mondays, Wednesdays, and Saturdays, plaintiff missed a total of four showers over the course of the approximately one-month period of time at issue here – three during the original period of time (May 29th, May 31st, and June 3rd), and one on June 26th. The longest period of time plaintiff went without a shower was eight days.[2] These deprivations, though obviously upsetting to plaintiff, were not sufficiently serious to implicate Eighth Amendment concerns.

Moreover, plaintiff has not demonstrated any deliberate indifference on the part of either of the two defendants named in this action. The evidence in the record demonstrates that once this issue of plaintiff being denied showers was brought to the attention of defendants during the investigation of plaintiff's grievance, defendants reviewed the policy and clarified that offenders should be allowed to shower while on no-movement status unless the offender's behavior warranted otherwise. The evidence also demonstrates that efforts were made to communicate this change in procedure to IMU staff. When plaintiff was again denied a shower on June 26, 2017, the investigation of plaintiff's initial grievance was not yet complete, and not all staff had yet been notified of the change. CUS Kullojka thereafter made additional efforts to clarify the

---

[2] IMU records show that plaintiff showered on May 27, 2017, before he was placed on no-movement status, and that he next showered on June 5, 2017, the day he came off no-movement status. (*See* Dkt. 14, Ex. 9 at 4-5.)

REPORT AND RECOMMENDATION
PAGE - 10

policy with staff, and plaintiff was allowed to shower on the next scheduled shower day, June 28, 2017.

Defendants have readily established through their evidence and arguments that the deprivation of showers over the very limited period of time at issue in this case was not objectively sufficiently serious to implicate Eight Amendment concerns. Defendants have also readily established that they were not deliberately indifferent to plaintiff's sanitation needs as demonstrated by their timely efforts to resolve the issue once it was brought to their attention. Plaintiff has offered no evidence or argument of his own to rebut that presented by defendants. In sum, plaintiff has demonstrated no violation of his Eighth Amendment rights arising out of the denial of showers while he was on no-movement status, and defendants are therefore entitled to summary judgment with respect to that claim.

Plaintiff also complains about the lack of privacy in the IMU showers due to the absence of shower curtains. There is varying information in the record concerning the amount of privacy afforded by the shower doors in the IMU absent a privacy curtain. Sergeant Roos states in his declaration in support of defendants' summary judgment motion that the panel which covers the shower doors in the IMU showers is sufficient to conceal the genital area of a male of average height, including plaintiff, without the use of a curtain. (Dkt. 14, ¶ 7.) However, plaintiff asserts in his complaint that there are large holes at the top and bottom of the shower doors in the IMU, and it appears that it was these holes which gave rise to plaintiff's privacy concerns in the absence of a shower curtain. (*See* Dkt. 5 at 3.)

Given the parties' somewhat different descriptions of the door, it is unclear how much of a privacy concern was, objectively speaking, presented by the design of the IMU shower door and what, if any, additional privacy would have been achieved by the addition of a curtain. What

REPORT AND RECOMMENDATION
PAGE - 11

is clear from the evidence, however, is that once plaintiff brought his privacy concerns to the attention of the defendants through the filing of grievances, steps were taken to address those concerns and the missing privacy curtains were replaced. (*See* Dkt. 15, Ex. 2 at 1 and Ex. 3 at 1.) Plaintiff makes no showing whatsoever of deliberate indifference on the part of the two named defendants related to the absence of shower curtains and, thus, defendants are entitled to summary judgment with respect to that claim as well.

## CONCLUSION

Based on the foregoing, this Court recommends that defendants' motion for summary judgment be granted, and that plaintiff's complaint and this action be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than February 21, 2019. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **February 22, 2019.**

//
//
//
//
//
//

REPORT AND RECOMMENDATION
PAGE - 12

This Report and Recommendation is not an appealable order. Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 30th day of January, 2019.

*James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 13